UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Antonette Jones, Individually and on Behalf of All Others Similarly Situated<br>　　　　　　　　PLAINTIFF<br>v.<br><br>Wal-Mart Stores, Inc.; Nutek Disposables, Inc.; and First Quality Enterprises, Inc.<br>　　　　　　　　DEFENDANTS | CASE NO. 14-cv-6305 |

## CLASS ACTION COMPLAINT

Plaintiff Antonette Jones (hereinafter "Plaintiff"), by Counsel, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Wal-Mart Stores, Inc. (hereinafter "Wal-Mart"), Nutek Disposables, Inc. (hereinafter "Nutek"), and First Quality Enterprises, Inc. (hereinafter "First Quality")(together "Defendants"). In support thereof, Plaintiff alleges as follows:

### INTRODUCTION

1. Defendant Wal-Mart Stores, Inc., doing business as Sam's Club, announced on Oct. 10, 2014 that it was recalling baby wipes and other products sold under the Simply Right brand name ("the Products") at U.S. retail stores due to a risk of bacterial infection.

2. Plaintiff, Antonette Jones, purchased a package of the Products in question at a Sam's Club retail store, and subsequently became ill due to a bacterial infection that is consistent with the illness described in the recall.

3. The Products that are the subject of the recall were designed, marketed,

1

manufactured, distributed and sold by Defendants Nutek, First Quality, and Wal-Mart across the United States, including in New York.

4.     On or about October 25, 2014, the U.S. Food and Drug Administration alerted consumers about a nationwide recall due to odor, discoloration, and positive test results for the bacteria Burkholderia cepacia as follows:

> Nutek Disposables, Inc. of McElhattan, PA has initiated a nationwide voluntary product recall at the retail level of all lots of baby wipes that it manufactured under the brand names Cuties, Diapers.com, Femtex, Fred's, Kidgets, Member's Mark, Simply Right, Sunny Smiles, Tender Touch, and Well Beginnings, because some packages may contain bacteria. These wipes were distributed by Nutek prior to October 21, 2014 to the following retail stores: Walgreens, Sam's Club, Family Dollar, Fred's, and Diapers.com.

5.     The FDA alert also stated that "(n)umerous reports of complaints have since been received by (Nutek) that include rash, irritation, infections, fever, gastro-intestinal issues, and respiratory issues…."[1]

6.     In addition, on October 10, 2014, Sam's Club sent an email and/or letter to consumers, including Plaintiff, alerting them that the Products in question may be tainted with the bacteria Burkholderia cepacia:

> October 10, 2014
>
> **Simply Right Baby Wipes**
>
> The safety of our members and their families is a top priority at Sam's Club. Our supplier, Nutek Disposables, Inc., has advised us that some Simply Right branded baby wipes offered for sale at Sam's Clubs beginning June 30th of this year may be contaminated with B. cepacia bacteria. According to the Centers for Disease Control, this bacteria "poses little medical risk to healthy people. However, people who have certain health problems like weakened immune systems or chronic lung diseases, particularly cystic fibrosis may be more susceptible to infections with B. cepacia." As soon as we learned that some of these baby wipes may not meet our safety and quality standards, we voluntarily directed all clubs to remove the product from our shelves and website and placed an

---

[1] U.S. Food and Drug Administration Press Release, *Nutek Disposables, Inc. Issues Alert Due to Potential Bacteria in Baby Wipes*, Oct. 25, 2014, available at http://www.fda.gov/Safety/Recalls/ucm420426.htm (last visited Oct. 27,

electronic block at our registers so the item can't be purchased. We continue to work with our supplier to quickly understand the facts and necessary next steps. Any consumer who purchased affected product should discontinue further use and promptly return any remaining product to Sam's Club for a full refund. Consumer Contact: Contact Sam's Club toll-free at (888) 746-7726 from 7 a.m. to 8 p.m. CT Monday through Friday, 9 a.m. to 5 p.m. CT Saturday, and 10 a.m. to 6 p.m. CT Sunday or anytime online at SamsClub.com- Sam and then click "Contact Us" for more information.

Sincerely,
Walmart Product Safety and Compliance

## PARTIES

7.  Plaintiff Antonette Jones is a citizen of the State of California, residing in Bell Gardens in Los Angeles County, California.

8.  During all times relevant to this complaint, beginning on June 30, 2014, and continuing until Oct. 10, 2014, Plaintiff purchased boxes of 900-count Simply Right baby wipes at a Sam's Club retail location in South Gate, California, for use in her household and for the care of her minor child.

9.  Plaintiff became sick due to a sudden infection in July 2014, the symptoms of which are consistent with the risks outlined in the recall, and which will be described in greater detail in Plaintiff's medical records.

10. Plaintiff's symptoms are also consistent with warnings and health bulletins published by the U.S. Centers for Disease Control and Prevention, including that Burkholderia cepacia may cause severe respiratory infections, pneumonia and nosocomial infections.[2]

11. Plaintiff later received a letter in October 2014 stating that the baby wipes had been recalled and that any unused wipes should be returned to the store.

---

[2] Burkholderia cepacia in Healthcare settings, *Centers for Disease Control and Prevention*, available at http://www.cdc.gov/HAI/organisms/bCepacia.html#a3 (last visited Oct. 22, 2014).

3

12. Defendant Wal-Mart is a corporation organized under the laws of Delaware, and having its principal place of business in Bentonville, Arkansas. Wal-Mart does business as Sam's Club, a membership-based retail warehouse. Through its Sam's Club chain stores, Wal-Mart sold the tainted and recalled Products throughout the United States, including in the Eastern District of New York.

13. Defendant Nutek is a Pennsylvania corporation with its principle place of business in Pennsylvania. At all times mentioned herein, Defendant Nutek Disposables, Inc. manufactured, designed, and distributed the Products to retailers including Wal-Mart.

14. Defendant First Quality is a corporation organized under Delaware law with its principal place of business in Great Neck, in Nassau County, New York. First Quality is the parent and owner of Nutek.

## JURISDICTION AND VENUE

15. This action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d)(2). Plaintiff and Defendants are citizens of different states and the amount in controversy in this class action in the aggregate exceeds $5,000,000, exclusive of interest and costs.

16. Defendant Wal-Mart maintains offices and agents, including Sam's Club stores, in the Eastern District of New York, as part of its usual and customary business.

17. Defendant First Quality, the owner of Defendant Nutek, maintains its principal place of business in the Eastern District of New York. Thus, this Court has personal jurisdiction over Defendants.

18. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391

(a)(2) and (a)(3). Defendants reside in the Eastern District of New York because Defendants are subject to personal jurisdiction in the Eastern District of New York.

## CLASS ACTION ALLEGATIONS

19. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this class action on behalf of the following class:

> **All residents of the United States who purchased a recalled baby wipe Product made by Defendant Nutek Disposables, Inc. in the United States from June 30, 2014 to October 25, 2014 (the "Class").**

20. Excluded from the Class are: Defendants, their officers, directors and employees, and any entity in which any Defendant has a controlling interest, the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees thereof, and the Court.

21. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), at least one Class member is of diverse citizenship from Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

22. Throughout discovery in this litigation, Plaintiff may find it appropriate and/or necessary to amend the definition of the Class. Plaintiff will formally define and designate a class definition when they seek to certify the Class alleged herein.

23. **Ascertainable Class:** The Class is ascertainable in that each member can be identified using information contained in Defendant Wal-Mart Stores, Inc.'s records.

24. **Common Questions of Law or Fact Predominate:** In accordance with Fed. R. Civ. P. 23(2), there are questions of law and fact common to the Class and which predominate over any individual issues.  Common questions of law and fact include, without limitation:

    a.    Whether the Products are, or were, defective;

    b.    Whether Defendants owed a duty to the class members under the

5

applicable statutes and law;

    c.    Whether Defendants knew the Products were defective when offered for sale to the public;

    d.    Whether Defendants misled consumers and concealed defects in the Products;

    e.    Whether Defendants violated consumer protection statutes of New York and other states (as described in more detail below);

    f.    Whether Defendants was unjustly enriched by their sale of the defective and recalled Products to consumers;

    g.    Whether members of the Class have suffered damages;

    h.    Whether Defendants has breached the express or implied warranties for the Products, or the provisions of the Magnuson-Moss Warranty Act, when they are used for their intended purpose;

    i.    Defendants' vicarious liability for the actions of their employees;

    j.    The extent of damages caused by Defendants' willful violations;

    k.    The type of damages and restitution that should be granted to Plaintiff and members of the Class;

    l.    Whether Defendants breached the Implied Warranty of Merchantability as set forth in the Uniform Commercial Code;

    m.    Whether Defendants breached the Implied Warranty of Fitness;

    n.    Whether Plaintiff and the Class are entitled to compensatory damages, restitution, and the amounts thereof respectively against Defendants;  and

    o.    Whether Defendants be ordered to disgorge, for the benefit of Plaintiff and

the Class, all or part of their ill-gotten profits received from the sale of the Products, and/or to make full restitution to Plaintiff and the Class members.

25.     **Numerosity:** In accordance with Fed. R. Civ. P. 23(1), the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes tens of thousands of members.

26.     **Typicality:** Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, was exposed to virtually identical conduct.

27.     **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of all other Class members.

28.     Plaintiff has retained competent counsel, experienced in class action litigation and consumer protection law.

29.     **Superiority:** In accordance with Fed. R. Civ. P. 23(b), *et seq*, the class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of individual citizens of the United States to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would require. The exact number of United States consumers who purchased the

Products can be obtained through discovery and from Defendants' business records; Class action treatment also will permit the adjudication of relatively small claims by certain class members, who could not individually afford to litigate a complex claim against a large corporate defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical, as the cost of litigation is almost certain to exceed any recovery they would obtain.

30. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with vastly superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

## COUNT I
## (BREACH OF EXPRESS WARRANTY)

31. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

32. Defendants were and are at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").

33. Defendants manufactured, distributed, and marketed the Simply Right baby wipe and diaper Products, which are "goods" within the meaning of the UCC and other applicable commercial codes.

34. In connection with the sale of the Products, Defendants made the following express warranties to consumers, as defined under the UCC, and other applicable state commercial codes, which offer objective descriptions of the Products, and inform the consumer of the specific functions the Products were designed to perform, including that they are "Hypoallergenic and cotton enhanced" and "(g)reat for adult care, baby care and growing kids." Defendants also expressly warranted that "The wipes have been specially designed so that the outer two layers are quilted and cotton enhanced for excellent cleaning, while being gentle to the skin."[3]

35. The Products were not altered by Plaintiff or class members.

36. The Products were defective when they left the exclusive control of Defendants.

37. Defendants Nutek and First Quality breached the above express warranties by failing to satisfy their obligations under the express warranty, because the Products were in fact not suitable for cleaning, because they were tainted with harmful bacteria.

38. If it attempts to limit the remedies to which Plaintiff and members of the proposed Class are entitled, or the period within which to bring claims, Defendants are estopped by their direct misrepresentations to consumers regarding the nature of the Products. In addition, and in the alternative, any such limitation is unconscionable and void based on Defendants' knowledge of the defect at the time of sale, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture, Defendants knew or

---

[3] Sam's Club, *Product Description for Simply Right Baby Care Premium Wipes – 900 Ct.*, available at http://www.samsclub.com/sams/sr-baby-wipes-900-ct/prod7510185.ip (last visited Oct. 22, 2014).

9

should have known that the Products were at all times defective, including at the time Plaintiff and Class members purchased the Products.

39. As a direct and proximate cause of Defendants' breach of express warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the Products as warranted and the Products as actually sold, as well as consequential and incidental damages, in the aggregate, in excess of $5 million.

## COUNT II
### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

40. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

41. Defendants, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that the Products were of merchantable quality and, among other warranties, that the Products would pass without objection in the trade or industry, and were fit for the ordinary purpose for which Products are used, such as cleaning household surfaces and cleaning of the skin for babies, children, and adults.

42. Because of the Products problems, as described in the recall announcement, the Products cannot perform their ordinary purpose and would not pass without objection in the trade and industry.

43. Defendants breached their implied warranties by selling, marketing, and promoting Products with a defect that consisted of harmful or hazardous bacteria.

44. Any language used by Defendants to attempt to exclude or limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct

misrepresentations to consumers regarding the existence and nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Defendants' knowledge of the defect at the time of sale, it fails to conform to the requirements limiting implied warranties under applicable law, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture, Defendants knew or should have known that the Products were at all times defective, including at the time Plaintiff and Class members purchased the product.

45. As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the Products as warranted and the Products as actually sold, as well as consequential and incidental damages for exposure to harmful bacteria and an increased risk of adverse health effects, in the aggregate, in excess of $5 million.

### COUNT III
### (BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE)

46. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

47. Defendants marketed, distributed, and sold the Products with implied warranties that they were fit for the particular purpose of cleaning household surfaces and cleaning the skin of babies, children, and adults At the time the Products were sold, Defendants knew, or should have known, that Plaintiff and Class members would rely on Defendants' skill and judgment regarding the efficacy and quality of the Products, including its cleaning properties.

48. In reliance on Defendants' skill and judgment and the implied warranties of fitness for a particular purpose, Plaintiff and Class Members purchased the Products.

49. The Products were manufactured or designed defectively, and delivered to consumers as such. Therefore, they were defective immediately upon purchase when it left the exclusive control of Defendants, and Defendants breached the implied warranty of fitness for a particular purpose to Plaintiff and all Class members. Any language used by Defendants to attempt to limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct misrepresentations to consumers regarding the nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Defendants' knowledge of the defect at the time of sale, it fails to conform to the requirements limiting remedies under applicable law, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture, Defendants knew or should have known that the Products were at all times defective, including at the time Plaintiff and Class members purchased the product.

50. As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the Products as warranted and the Products as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences, in the aggregate, in excess of $5 million.

**COUNT IV**
**(VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT)**

51. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

52. The Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. §§ 2301, *et seq.*, provides a private right of action by purchasers of consumer products against manufacturers or retailers who fail to comply with the terms of an express or implied warranty. See 15 U.S.C. § 2310(d)(1). As demonstrated herein, Defendants failed to comply with the terms of their express and implied warranties with regard to the defective Products.

53. The baby wipe and diaper Products are "consumer products" as that term is defined in § 2301(1) of the Magnuson-Moss Warranty Act, because they are tangible property held for sale to consumers for household purposes.

54. Plaintiff and members of the proposed Class are "consumers," as that term is defined in § 2301(3) of the Magnuson-Moss Warranty Act.

55. Defendants are a "warrantor," as that term is defined in § 2301(5) of the Magnuson-Moss Warranty Act. Defendants offered express and implied warranties on their products that put Defendants in privity with Plaintiff and the Class.

56. Defendants' written affirmations of fact, promises and/or descriptions, as alleged herein, are "written warranties" within the meaning of § 2301(6) of the Magnuson-Moss Warranty Act.

57. Defendants' "implied warranties" are within the meaning of § 2301(7) of the Act.

58. The Plaintiff and members of the Class notified Defendants of their breach of express warranties prior to the filing of this Complaint, including through attempting to return the recalled Products, and to obtain replacements or reimbursement from Defendant.

59. Defendants were given a reasonable opportunity to cure their failure to comply with express and implied warranties. However, Defendants' "cures" were inadequate and did not fully address the injuries complained of herein.

60. As a direct and proximate result of Defendants' breaches of the Magnuson- Moss Warranty Act, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the Products as warranted and the Products as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

## COUNT V
### (VIOLATION OF NYS GBL 349 AND 350 AND/OR THE VARIOUS ANALAGOUS STATE CONSUMER PROTECTION LAWS OF THE OTHER STATES)

61. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

62. Because Defendant, First Quality, is a New York corporation, the New York Deceptive Practice Act is applicable.

63. Defendants' sale of the Products to Plaintiff and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of N.Y. Gen. Bus. Law §§ 349(a) and 350.

64. Defendants' advertisement of the Product on their websites and in their advertising to Plaintiff and the Class as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of NYS GBL 350.

65. Defendants in the normal course of their business, manufactured, designed, packaged, advertised and sold the recalled Products to Plaintiff and the Class.

66. Defendants affirmatively misrepresented the safety and effectiveness of the Products.

67. Plaintiff reasonably relied to her detriment on the false promises made by Defendant, as did the putative Class she seeks to represent.

68. The foregoing acts and conduct of Defendants are deceptive in that Defendants represented to the consumer class that their Products were hypoallergenic and suitable for cleaning purposes, when they in fact were not.

69. By falsely advertising, marketing and selling the Products as they did, Defendants violated New York and other state consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes, and by these deceptive actions, Plaintiff and the class were harmed.

70. In the alternative to the uniform application of GBL 349 to the putative Class, all Class members are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they reside.

71. The consumer protection law of the state in which each Class member resides and purchased the recalled Products declares that unfair or deceptive acts or practices in the conduct of trade or commerce is unlawful. Defendants violated the consumer protection laws of all states in the same manner as described above.

72. All of the consumer protection states have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising that further allow consumers to bring private or class actions.[4]

---

[4] These statutes include, but are not limited to, the following: Alabama: Ala. Code § 8-19-5(5), (7), (27); Alaska: Alask. Stat. § 45.50.471(b)(4), (6), (11), (12); Arizona: Ariz. Rev. Stat. Ann. § 44-1522; Arkansas: Ark. Code Ann. § 4-88-107(a)(1), (10); § 4-88-108; Colorado: Colo. Rev. Stat. Ann. § 6-1-105(e); Connecticut: Conn. Gen. State. Ann. § 42-110b; Delaware: 6 Del. Code § 2513(a); District of Columbia: D.C. Code § 28-3904(e); Florida: Fla. Stat.

73.  By reason of such violations and pursuant to N.Y. Gen. Bus. Law § 349(a) and other consumer protection statutes, Plaintiff and members of the proposed Class are entitled to recover all of the monies paid for the defective and recalled Products; any and all statutory damages; and to recover any and all consequential damages recoverable under the law including, but not limited to, past and future lost wages, medical expenses, anxiety, fear, and stress; similar losses for their minor children, and other losses.

74.  In connection with the sale of the recalled Products to both Plaintiff and members of the proposed Class, Defendants, through their employees, agents and representatives, violated consumer protection statutes by failing to disclose that the recalled Products were tainted with bacteria, and by making affirmative false statements about the true abilities of the camera.

75.  Plaintiff and members of the proposed Class are consumers within the meaning of those laws.

76.  As a direct and proximate result of Defendants' unfair and/or deceptive acts or practices, Plaintiff and Class were damaged.

---

§ 501.204(1); Georgia: Ga. Code Ann. § 10-1-370; § 10-1-393(a); Hawaii: Haw. Rev. Stat. §§ 480-2(a); 481A-3; Idaho: Idaho Code § 48-603(5), (7), (17), (18); Illinois: 815 ILCS 505/2; 815 ILCS 510/2(a)(5), (a)(7), (a)(12); Indiana: Ind. Code § 24-5-0.5-3(a)(1), (a)(2); Iowa: Iowa Code § 714.16; Kansas: Kan. Stat. Ann. § 50-626(a); 626(b)(1)(A), (D), (F), (G); 626(b)(2), (3); Kentucky: KRS § 367.170; Louisiana: La. R. S. § 51:1405.A; Maine: Me. Rev. Stat. Ann. tit.5, § 207; Maryland: Md. Code Ann. Com. Law § 13-301(1); (2)(i); (2)(iv); (3); (9)(i); Massachusetts: Mass. Gen. Laws Ann., Ch. 93A, §§ 2, 9; Mich. Comp. Laws Ann. §§ 445.903 (3)(1)(c), (e), (s), (z), et. seq.; Minnesota: Minn. Stat. §§ 325F.69; 325D.13; 325D.44; 8.31, subd. 3a; Mississippi: Miss. Code Ann. § 75-24-5(2)(e), (g); Montana: Mont. Code. Ann. § 30-14-10; Nebraska: Neb. Rev. Stat. Ann § 59-1609; Id. at § 87-303(a); Nevada: Nev. Rev. Stat. §§ 598.0903 through 598.0999; Nev. Rev. Stat. § 41.600; New Hampshire: N.H. Rev. Stat. Ann. §§ 358-A:2; 358-A:2(V); 358-A:2(VII); New Jersey: N.J. Stat. Ann. § 56:8-2; New Mexico: N.M. Stat. Ann. § 57-12-3 and § 57-12-2 (5), (14); New York: N.Y. G.B.L. § 349(a); North Carolina: NC General Statutes §§ 75-1 *et seq.*; North Dakota: N.D.C.C. §§ 51-12-01, 51-15-02; Ohio: Ohio Rev. Code § 1345.02 (A), (B)(1)-(B)(2)ii.; Oklahoma: Okla. Stat. Ann. tit. 15, § 753 (2), (3), (5), (20), tit. 78, § 53; Oregon: Or. Rev. Stat. § 646.608(1)(e), (g), (t), (u); § 646.608(2); Pennsylvania: 73 Pa. Stat. Ann. § 201-3; § 201-2(4)(ii); (v); (vii); (xxi); Rhode Island: R.I. Gen. Laws § 6-13.1-2. 6-13.1-1(5)(E), (L), (M), (N); South Carolina: S.C. Code § 39-5-20(a); South Dakota: South Dakota Codified Laws § 37-24-6(1); Tennessee: Tenn. Code §§ 47-18-104(a), (b)(5), (b)(7), (b)(21), (b)(27); Texas: Tex. Bus. & Com. Code § 17.46(b)(2), (b)(3), (b)(5), (b)(7), (b)(24); Utah: § 13-11-4(1), (4)(2)(a), (4)(2)(b), (4)(2)(e), (4)(2)(i); Vermont: 9 Vt. Stat. § 2453(a); Virginia: Va. Code § 59.1-200(A)(2), (3), (5), (14); Va. Code § 59.1-683 with § 18.2-216; Washington: Wash. Rev. Code § 19.86.020; West Virginia: W.Va. Code § 46A-6-102(7)(B), (C), (E), (G), (L), (M); § 46A-6-104; Wisconsin: Wisc. Stat. § 100.18(1); Wyoming: Wyo. Stat. § 40-12-105(a)(i), (ii), (iii), (xv).

## COUNT VI
## (FRAUD)

77. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

78. Defendants have engaged in a common scheme of fraud, through which they intentionally deceived consumers by failing to disclose health risks and defects in the Products, including to Plaintiff and members of the proposed Class.

79. Defendants perpetrated the common scheme of fraud complained of herein by omitting, or failing to disclose to Plaintiff and Class, that the Products were defective and that in many cases they were not fit for household use.

80. Plaintiff and the Class are presumed to have justifiably relied on Defendants' omissions and failures to disclose.

81. As a direct and proximate result of Defendants' common scheme of fraud, Plaintiff and Class were damaged.

## COUNT VII
## (UNJUST ENRICHMENT)

82. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

83. To the detriment of Plaintiff and the Class, Defendants have been, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

84. Plaintiff and the Class conferred a benefit on Defendants when they paid Defendants approximately for Products tainted with harmful bacteria that resulted in a value far less than the retail price.

85. Defendants unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

86. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained profits received by Defendants as a result of their inequitable conduct as more fully stated herein.

## COUNT VIII
## DECLARATORY JUDGMENT

87. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

88. An actual and justiciable controversy exists between Defendants and Plaintiff and Class.

89. Plaintiff and Class are entitled to a declaration from this Court that Defendants' conduct is unlawful and in violation of applicable laws as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, demands judgment as follows:

A. A determination that this action is a proper class action for compensatory, consequential, and statutory damages as alleged herein;

B. For pre-judgment interest from the date of filing this suit;

C. For reasonable attorney's fees and expenses;

D. For exemplary and punitive damages;

E. For all costs of this proceeding;

F. Restitution of all fees paid to Defendants in excess of what the law allows;

G. A preliminary injunction enjoining Defendants and all others, known and unknown, from continuing to take unfair, deceptive, illegal and/or unlawful action as set

forth in this Complaint; and

H.     Such other and further relief as this Honorable Court finds just and proper under the circumstances.

## JURY DEMAND

WHEREFORE, as to each of the foregoing matters, Plaintiff demands a trial by jury on all issues so triable as a matter of right.


Dated: Oct. 27, 2014

                          Respectfully submitted,

**LAW OFFICES OF PAUL C. WHALEN, P.C.**

By: _____
Paul C. Whalen (PW 1300)
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 627-5610


**JONES WARD PLC**
Jasper D. Ward IV
*Pro Hac Vice Pending*
Marion E. Taylor Building
312 South Fourth Street, Sixth Floor
Louisville, Kentucky 40202
P: (502) 882- 6000
F: (502) 587-2007

Attorneys for Plaintiff and the Class

19