UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONETTE JONES, Individually and on Behalf of All Others Similarly Situated, <br><br><div align="right">Plaintiffs,</div><br> - v. - <br><br> FIRST QUALITY ENTERPRISES, INC., FIRST QUALITY CONSUMER PRODUCTS, LLC, NUTEK DISPOSABLES, INC., WAL-MART STORES, INC., FAMILY DOLLAR STORES, INC., WALGREEN CO., dba WALGREENS, and FRED'S, INC., <br><br><div align="right">Defendants.</div> | Case No. 14-cv-6305 <br><br> Hon. Leonard D. Wexler, U.S.D.J. <br> Hon. Arlene R. Lindsay, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSENT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF COUNSEL AS CLASS COUNSEL, AND APPROVAL OF NOTICE PLAN**

## TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................1

I.   PRELIMINARY STATEMENT .................................................................................1

II.  PROCEDURAL HISTORY AND SETTLEMENT SUMMARY ...............................3

    A.  Procedural History .................................................................................................3

    B.  The Settlement .......................................................................................................5

        1.   Certification of the Class ...............................................................................5

        2.   Notice and Class Action Administrator ..........................................................6

        3.   Class Counsel Fees .......................................................................................7

        4.   Awards to Class Representatives ...................................................................7

III. ARGUMENT .............................................................................................................8

    A.  The Court Should Preliminarily Approve the Settlement......................................8

        1.   The Settlement Is Procedurally Fair:  The Settlement is the Result of Good
            Faith, Arm's-Length Negotiations by Well-Informed, Highly-Experienced
            Counsel with the Assistance of a Mediator..................................................9

        2.   The Settlement Is Substantively Fair .........................................................10

    B.  The Court Should Approve Class Certification ...................................................15

        1.   The Class Satisfies the Requirements of Rule 23(a) ...................................15

        2.   The Class Meets the Requirements of Rule 23(b)(3) ..................................19

    C.  Notice to Members of the Class is Sufficient .....................................................22

        1.   The Form of Notice is Sufficient  ..............................................................23

        2.   Dissemination of Notice is Practicable Under the Circumstances ............24

IV.  CONCLUSION.........................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................... 15, 20

*Berland v. Mack,*
   48 F.R.D. 121 (S.D.N.Y. 1969) ....................................................................... 25

*Blessing v. Sirius XM Radio, Inc.,*
   507 F. App'x. 1 (2d Cir. 2012) .......................................................................... 8

*Charron v. Pinnacle Grp. N.Y. LLC,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012). ............................................................ 14

*Charron v. Wiener,*
   731 F.3d 241 (2d Cir. 2013) ................................................................... 9, 10, 18

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ....................................................................... *passim*

*Collins v. Olin Corp.,*
   248 F.R.D. 95 (D. Conn 2008) ........................................................................ 21

*Diaz v. Residential Credit Solutions, Inc.,*
   299 F.R.D. 16 (E.D.N.Y. 2014) ...................................................................... 18

*Dolgow v. Anderson,*
   43 F.R.D. 472 (E.D.N.Y. 1968) ...................................................................... 25

*Dupler v. Costco Wholesale Corp.,*
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................ 12

*Ebin v. Kangadis Food, Inc.,*
   297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................... 17

*Enriquez v. Cherry Hill Mkt. Corp.,*
   993 F. Supp. 2d 229 (E.D.N.Y. 2014) ............................................................ 17

*Fogarazzao v. Lehman Bros., Inc.,*
   232 F.R.D. 176 (E.D.N.Y. 2005) .................................................................... 17

*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000) .............................................................................. 10

*In re Agent Orange Prod. Liab. Litig.,*
   818 F.2d 145 (2d Cir. 1987) ............................................................................ 16

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.,*
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................ 10

*In re Drexel Burnham Lambert Group, Inc.,*
   960 F.2d 285 (2d Cir. 1992) ............................................................................ 15

*In re IMAX Securities Litig.,*
   283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................... 22

*In re Lupron Mktg. and Sales Practices Litig.,*
   228 F.R.D. 75 (D. Mass. 2005) ....................................................................... 20

iii

*In re Merrill Lynch Tyco Research Sec. Litig.,*
   249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................ 25

*In re Metlife Demutualization Litig.,*
   689 F. Supp. 2d 297 (E.D.N.Y. 2010). .............................................................. 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................ 9

*In re Painewebber Ltd. Pshps. Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................ 13

*In re Scotts EZ Seed Litig.,*
   304 F.R.D. 397 (S.D.N.Y. 2015) ...................................................................... 17

*In re Telik, Inc. Sec. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................. 9

*In re Traffic Exec. Asso.—E. Railroads,*
   627 F.2d 631 (2d Cir. 1980)............................................................................. 11

*Korn v. Franchard Corp.,*
   456 F.2d 1206 (2d Cir. 1972) .......................................................................... 16

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997)....................................................................... 16, 18

*Mascol v. E&L Transp., Inc.,*
   No. CV-03-3343 (CPS), 2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. June 29, 2005) ......... 20, 21

*Mathis v. Bess,*
   138 F.R.D. 390 (S.D.N.Y.  1991) .................................................................... 16

*Maywalt v. Parker and Parsley Petroleum Co.,*
   67 F.3d 1072 (2d Cir. 1995)...................................................................... 23, 24

*McReynolds v. Richards-Cantave,*
   588 F.3d 790 (2d Cir. 2009).......................................................................... 9, 11

*Mendoza v. Casa De Cambio Delgado, Inc.,*
   No. 07CV2579(HB), 2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12, 2008). ............. 21, 22

*Messner v. Northshore Univ. HealthSystem,*
   669 F.3d 802 (7th Cir. 2012) .......................................................................... 20

*Moore v. Margiotta,*
   581 F. Supp. 649 (E.D.N.Y. 1984) ................................................................. 18

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950).................................................................................. 23, 25

*Noble v. 93 Univ. Place Corp.,*
   224 F.R.D. 330 (S.D.N.Y. 2004) .................................................................... 21

*Passafiume v. NRA Group, L.L.C.,*
   274 F.R.D. 424 (E.D.N.Y. 2010)................................................................ 11, 12

*Phillips Co. v. Shutts*,
  472 U.S. 797 (1985)...................................................................................... 21, 23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................ 11

*Reilly v. Tucson Elec. Power Co.*,
  512 U.S. 1220 (1994).......................................................................................... 24

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)........................................................................ 19, 20

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)......................................................................... 16, 17

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)........................................................................... 17, 20

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993), ............................................................................. 24

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ....................................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................ 8, 9, 24

*Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*,
  280 F.3d 124 (2d Cir. 2001).............................................................................. 20

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Ins.*,
  No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) ....... 11

*Weigner v. City of New York*,
  852 F.2d 646, (2d Cir. 1988), cert. denied, 488 U.S. 1005 (1989) ......................................... 25

*West Virginia v. Chas. Pfizer & Co.*,
  440 F.2d 1079 (2d Cir. 1971)............................................................... 24, 25, 26

*Willix v. Healthfirst, Inc.*,
  No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ............................ 13

**Statutes**
Fed. R. Civ. P. 23 ..................................................................................... *passim*

**Treatises**
Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 8.2 at 162-65 (4th ed.
  2002) ....................................................................................................... 22

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiffs Antonette Jones, Rochelle Endres, Daisy Aguillon, Reneashia Barnes, Melonie Burton, Christen Graham, Sam Lopez, Randall Brown, Melissa Bailey, Jessica Florum, Lynette Wheeler, Jakie Pryor, Kristin Travis, Shimeka Rogers, Toni Scott, Katherine Melford, Nicole Zarembka, Mark Martinez, Shannon Silver, Cotranda Osteen, Chevelle Ragsdale, Gina Prestigiacomo, Gerald Clark, Katrina Graham, Shannon Moreland, LaShun Parish, Christina Hunter, Tanisha Satterwhite, Mehdi Mazrooee, Rachel Puckett, Bobby Friday, Ruth Gonzalez, Mark Hendel, Danielle Ralph, Van and Neisha Burton, and Nanette Meck, (hereinafter "Plaintiffs") on behalf of themselves and all others similarly situated, hereby request pursuant to Fed. R. Civ. P. 23(b)(1)(B) and 23(b)(2) that the Court enter an order: (1) certifying the Settlement Class; (2) preliminarily approving the attached proposed Settlement Agreement; (3) directing notice to the class; (4) appoint Counsel for Plaintiffs as Class Counsel; and (5) setting dates for objections and a Final Fairness Hearing. In support of their motion, the Plaintiffs respectfully show the following:

## I.  PRELIMINARY STATEMENT

1.     This is a class action lawsuit involving millions of recalled baby wipes (the "Products") manufactured and sold by Nutek in 2013 and 2014, and purchased by Plaintiffs and consumers throughout the United States.

2.     Plaintiff Jones filed her complaint with this Court on October 27, 2014 (DE 1).

3.     On or about October 25, 2014, the U.S. Food and Drug Administration alerted consumers about a nationwide recall due to odor, discoloration, and positive test results for the bacteria *Burkholderia cepacia* ("*B. cepacia*") found in a limited number of wipes manufactured by Defendant Nutek related to its disposable baby wipes line of brands (the "Recall").

4.     On October 10, 2014, Sam's Club sent an email and/or letter to consumers, including Plaintiffs, alerting them that the Products in question may be tainted with the bacteria *B. cepacia*.

5.     Plaintiffs have alleged the Recall may have affected hundreds of thousands of consumers who purchased the wipes at retail locations.  Plaintiffs have alleged damages that include, but are not limited to, loss of value, anxiety, fright, unjust enrichment, fraud, violation of consumer protection and business practices statutes, bacterial and respiratory infections caused by the bacterial exposure, and other personal injuries, as described in more detail below.

6.     After the Recall, Nutek stated that it had received numerous unsubstantiated allegations that consumers who used the Products had allegedly developed rashes, irritation, and fever due to the alleged presence of *B. cepacia* on the Products.

7.     At the outset, Plaintiffs' main objective in filing the lawsuit was to remedy the alleged deceptions in the advertising and sale of the Products, to remedy the unjust enrichment of Defendants related to the sale of the Products, and to compensate any consumer personally

injured by use of the Product.

8.      All Defendants deny Plaintiffs' allegations, deny any wrongdoing of any kind, and believe that the Action is without merit.  However, in taking into account the uncertainty, risk, and delay inherent in litigation, Defendant Nutek Disposables, Inc. has agreed to enter into the attached Settlement Agreement to avoid further litigation expense and inconvenience to it and its customers, and to remove the distraction of burdensome and protracted litigation.

9.      Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice can be provided to the members of the Class and a Fairness Hearing can be scheduled to consider final approval of the Settlement.  *See* Fed. R. Civ. P. 23(e).

10.     Plaintiffs also respectfully request provisional certification of the proposed Class, to be appointed as representatives for the Class, and for Plaintiffs' Counsel: Jasper D. Ward IV of Jones Ward PLC ("Ward"), Joseph J. Siprut of Siprut PC ("Siprut"), and Paul C. Whalen of the Law Office Of Paul C. Whalen, P.C. ("Whalen") as Co-Lead Counsel for the Class.  *See* Fed. R. Civ. P. 23(g).

11.     Plaintiffs further request approval of the proposed notice program as it meets the requirements of due process and satisfies the requirements under Rule 23. *See* Fed. R. Civ. P. 23.

## II.     PROCEDURAL HISTORY AND SETTLEMENT SUMMARY

### A.      <u>Procedural History</u>

12.     On October 27, 2014, Plaintiff Antonette Jones filed her complaint with this Court. Other cases were filed in other Districts.

13.     On December 15, 2014, Defendants filed for removal with a hearing by the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") (DE 9).

14.     On December 19, 2014, Plaintiffs filed their First Amended Complaint (DE 12) (the "FAC").

15.     In their FAC, Plaintiffs alleged breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty for a particular purpose, violation of the Magnuson-Moss Warranty Act, New York's deceptive trade practices statutes in N.Y. Gen. Bus. Law §§ 349 and 350, Violations of fifteen different state consumer protection statutes, fraud, and unjust enrichment. *See generally FAC* DE 12.

16.     On April 2, 2015, the MDL Panel issued its order denying Defendants' motion for transfer of the cases against pending against Defendants.[1] The Panel concluded that centralization would not serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation.  Although the actions shared some common factual questions regarding the cause or causes of the potential contamination of certain Nutek disposable wipes with the bacteria *Burkholderia cepacia*, the Panel was not convinced that the common issues alone were sufficiently complex or numerous to warrant the creation of an MDL.[2]

17.     On May 8, 2015, Defendants requested a pre-motion conference to allow briefing for Defendants' Motion to Dismiss (DE 35). On May 11, 2015, this Court approved the parties' stipulated schedule for briefing Defendants' Motion to Dismiss.

18.     On July 15, 2015, Plaintiffs filed a Motion to file a Second Amended Consolidated Class Action Complaint ("SAC") (DE 37). Defendants opposed this Motion (DE 38).

---

[1] Defendants' motion originally included six actions whose plaintiffs later dismissed their respective actions and joined an amended complaint in the Eastern District of New York Jones action, depriving the litigation of multidistrict character.  Defendants subsequently filed an amended motion for centralization that includes the present actions.  Further, a related action was removed to federal court in the Middle District of Georgia during the pendency of the amended motion for centralization.
[2] MDL No. 2605 IN RE: NUTEK BABY WIPES PRODUCTS LIABILITY LITIGATION Panel Order dated April 2, 2015.

19.     On August 6, 2015, this Court referred Plaintiffs' Motion for Leave to File its SAC to Magistrate Judge Arlene R. Lindsay.

20.     On September 28, 2015, Defendants filed their Motion to Dismiss as to Counts V, VII and IX, but did not move to dismiss the rest of the FAC (DE 43).

21.     On October 26, 2015, Plaintiffs' Counsel and Defendants' counsel met in-person for settlement mediation with the Hon. William A. Dreier (Ret.), an all-day mediation that continued beyond its scheduled end.

22.     After briefing by both parties, this Court on November 25, 2015 denied without prejudice to renewal, Defendants' Motion to Dismiss for Failure to State a Claim (DE 43), Motion to Dismiss for Failure to State a Claim (DE 47), and Motion to Dismiss for Lack of Jurisdiction (DE 48) until decision on Plaintiffs' motion for leave to amend the FAC.

23.     After briefing by both parties, Judge Lindsay granted Plaintiffs' leave to amend the FAC on December 22, 2015 (DE 49).

24.     On March 11, 2016, the parties submitted a Joint Motion to this Court for the case to be taken off of the trial calendar pending settlement negotiations by the parties. After the mediation before Judge Drier and protracted and contentious telephonic discussions and many revisions, the Parties reached agreement on the terms of this Settlement.[3]

25.     Plaintiffs now move for preliminary approval of the Settlement as outlined in the Settlement Agreement.

**B.     The Settlement**

26.     The Settlement Agreement defines the Class, describes the Relief to which the Parties agreed, and proposes naming Ward, Whalen and Siprut as Co-Counsel for the Class as

---

[3] The Parties' Class Action Settlement Agreement ("Settlement Agreement") is attached to the Joint Declaration of Paul C. Whalen and Jasper D. Ward IV In Support of Plaintiffs' Unopposed Motion ("Joint Decl.") as Exhibit 1. Capitalized terms shall have the meaning that the Settlement Agreement ascribes to them.

stated in the Agreement. *See* Settlement Agreement, ¶ 5.1.4.

27.    The Agreement proposes a plan for disseminating notice to the Class. *See* Settlement Agreement, ¶ 10.

### 1.    Certification of the Class

28.    Under the Settlement Agreement, the Parties agree to seek provisional certification of the Class, pursuant to Federal Rule of Civil Procedure 23(b)(2), defined as follows:

> All Persons in the United States who (a) purchased or acquired (including by gift) Recalled Baby Wipes on October 25, 2013 and through to October 25, 2014 for or on behalf of themselves or a minor child over whom they have custody and control as a parent or guardian, or to be given as a gift to another Person; (b) are the parent or guardian of a minor child who purchased or acquired (including by gift) Recalled Baby Wipes on October 25, 2013 and through to October 25, 2014; or (c) was exposed to the Recalled Baby Wipes purchased between October 25, 2013 and through to October 25, 2014 whereby such exposure resulted in a Qualifying Symptom, including any Guardian, Executor, Administrator or other representative of any Person  exposed to the Recalled Baby Wipes whereby such exposure resulted in a Qualifying Symptom. *See* Settlement Agreement, ¶ 3.44.

Excluded from the Settlement Class are: (a) persons or entities who purchased the Products for the purpose of resale or distribution; (b) persons who are directors and officers of Nutek or its parent, subsidiary, or affiliate companies; (b) governmental entities; (c) persons who timely and properly exclude themselves from the Class as provided in the Settlement Agreement; (d) persons who signed a release of any Defendant for compensation for the claims covered by the Settlement; and (e) any judicial officer hearing this Litigation, as well as their immediate family members and employees.

29.    The proposed class meets all Rule 23 elements as described, *infra*.

### 2.    Notice and Class Action Administrator

30.     The Settlement Agreement proposes that the Court appoint Dahl Administration LLC to administer the notice process, and outlines the methods of providing notice of the Settlement to the Class, including the opportunity to request exclusion or to object to the Settlement.

31.     The Settlement Agreement provides the two forms by which the Class Action Administrator will disseminate notice of the Settlement Agreement to the Class: direct mail postcard and email.  *See* Settlement Agreement, ¶ 3.9.

32.     The Settlement Agreement contemplates the Class Action Administrator providing notice of the Settlement to the Class through:  (1) direct mail by postcard and email of the Summary Notice to members of the Class whose contact information is known to Defendants; and (2) creation of a Class Settlement Website that contains Settlement information and important case-related documents.  In addition, the Class Settlement Website will include procedural information regarding the status of the Court-approval process. See Settlement Agreement, ¶ 10.6.4.

33.     The Settlement Agreement specifies that Defendant Nutek Disposables, Inc. will pay the actual cost of class notice.  *See* Settlement Agreement, ¶ 10.6.1.

    **3.     Class Counsel Fees**

34.     Investigation and confirmatory discovery by Class Counsel show that that Nutek acted proactively and responsibly after learning of the potential contamination and that a fund of approximately $7,000,000 was paid out by Nutek to Plaintiffs and the class for refunds, and a full refund program was available with total available refunds much higher than $7,000,000, and leaving the refund program open was in part a result of Plaintiffs' litigation. Through this settlement, Plaintiffs' counsel has secured additional compensation for the class as described in

the Settlement Agreement, as well as the cost of notice and administration of this Settlement and attorneys' fees paid separately.  Plaintiffs' counsel have also secured additional compensation for those who previously received a full refund of their recalled product.

35.     Class Counsel will apply for $1,150,000 for fees and costs and expenses, above any recovery for the Class. This amounts to less than 15% of the amount of recovery by the class.

36.     Defendant Nutek Disposables, Inc. will pay up to these amounts, as awarded by the Court.  This amount was agreed to by the Parties with the assistance of Judge Dreier as mediator; after extensive negotiation, and after agreement on all other substantive terms.

37.     The Parties recognize that the Court shall have the final authority to award the amount of fees and expenses.

### 4.     Awards to the Class Representatives

38.     Class Counsel will apply for awards of $1,500.00 to the named Plaintiffs and $250 for each non-named class representative represented by Class Counsel, not to exceed $58,450 combined.

39.     The Parties acknowledge the Court shall have the final authority to determine the amount of the awards up to these amounts in recognition of their service as plaintiffs in this action.  Defendant Nutek Disposables, Inc. will pay up to these amounts, as awarded by the Court.

## III.   ARGUMENT

### A.   The Court Should Preliminarily Approve The Settlement

40.     Class Counsel worked steadfastly to litigate this matter and reach the Settlement. Counsel engaged in a day-long mediation and continued negotiations for months over broad

terms of a settlement, and then months up to the time of this motion negotiating specific details of the settlement.

41.     While Plaintiffs and Class Counsel believe the claims resolved have merit, they also recognize that there is significant expense and risk associated with continuing to prosecute the claims through trial and appeal.  *Id*. Class Counsel has taken those uncertainties into account as well as the delays inherent in such litigation.  *Id*. In the process of investigating and litigating this case, Class Counsel have conducted significant research on the various consumer protection statutes at issue as well as the overall legal landscape to determine the likelihood of success and the reasonable parameters for which like settlements have been approved.  *Id*. They believe the Settlement provides significant relief to the Class. Accordingly, Class Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of the Class.  *Id*.

42.     In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010).

43.     "A district court's approval of a settlement is contingent on a finding the settlement is 'fair, reasonable, and adequate.'" *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2d Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2).

44.     The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement is both:  (1) procedurally fair and (2) substantively fair.  *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009).

45.     In recognition of the "strong judicial policy in favor of settlements, particularly in the class action context," courts evaluating settlement agreements adopt a presumption of both their procedural and substantive fairness.  *See McReynolds*, 588 F.3d at 803 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 116 (2d Cir. 2005)).  The Settlement here is both procedurally and substantively fair.

<div align="center">

**1.      The Settlement Is Procedurally Fair:  The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed, Highly-Experienced Counsel with the Assistance of a Mediator**

</div>

46.     A proposed settlement is entitled to a "presumption of fairness" where, as here, the process leading to the proposed settlement was fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients (and, in the case of Class Counsel, the Class).  *See McReynolds*, 588 F.3d at 803; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arms' length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel.").

47.     Here, counsel for the Parties have a substantial amount of experience in litigating class actions as well as negotiating class settlements.  As detailed above, before agreeing to a Settlement, Class Counsel conducted extensive investigation and weighed the risks of continued litigation. It was through this process that Class Counsel was able to obtain an understanding of the strengths and weaknesses of their case and Defendant's case and to evaluate and negotiate

the Settlement.  *See* Joint Declaration.

48.     The participation of an experienced mediator in settlement negotiations further establishes a settlement's fairness.  *See In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding the arm's-length negotiation element "amply satisfied" where the parties, "represented by highly experienced and capable counsel, engaged in extensive arms' length negotiations, which included multiple sessions mediated by . . . an experienced and well-regarded mediator of complex . . . cases.").

49.     The fairness of the settlement here is bolstered by the fact that the Parties engaged in mediation with the assistance of former presiding judge of the New Jersey Appellate Division Judge William A. Dreier, serving as mediator.

50.     The Settlement is procedurally fair.

### 2.     The Settlement Is Substantively Fair

51.     To demonstrate the substantive fairness of a settlement, a party must show that as many of the nine factors the Second Circuit U.S. Court of Appeals set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), as possible weigh in favor of approving the settlement.  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).

52.     The nine *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement … in light of the best possible recovery; and

(9) the range of reasonableness of the settlement … to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463).  These factors favor preliminary approval of the Settlement.

53.     However, "'[i]n the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval.'"  *Passafiume v. NRA Group, L.L.C.,* 274 F.R.D. 424, 430 (E.D.N.Y. 2010).  "It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Asso.—E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

54.     In fact, some *Grinnell* factors, "particularly the reaction of the class to the settlement, are impossible to weight prior to notice and a hearing."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Ins.*, No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, at *20 (E.D.N.Y. Apr. 17, 2015) ("[A]t preliminary approval, it is not necessary to exhaustively consider the [*Grinnell*] factors applicable to final approval."):

> Therefore, a full fairness analysis is unnecessary at this stage. [citation omitted].  Preliminary approval is appropriate where it is the result of serious, informed, non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.

*Passafiume*, 274 F.R.D. at 430-31.

55.     Even though the Court need not, at the preliminary approval stage, assess the final approval factors, a review of those factors demonstrates that this Settlement merits preliminary

approval.

a. **The complexity, expense and likely duration of litigation (*Grinnell* factor 1)**

56.     Consumer class action lawsuits, like this action, are complex, expensive, and lengthy.  *See, e.g., Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010).  As described above, Plaintiffs filed this action almost three years ago.  Since then, the action has prompted multiple motions to transfer, a motion for dismissal, private mediation, and multiple disputes over its scope.

57.     Should this Court not approve the Settlement, this lengthy and contentious litigation would resume, with disputes likely occurring over discovery, class certification, summary judgment motions, and expert testimony.  Moreover, the benefits of reverting to litigation and the likelihood of success would be uncertain.

b. **The reaction of the class to the settlement (*Grinnell* factor 2)**

58.     It is premature to address this factor.

c. **The stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)**

59.     The third Grinnell factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

60.     Here, the Parties engaged in investigation of various personal injury scenarios of injured consumers and extensive investigation of Defendants; Plaintiffs also received discovery sufficient to assess damages to the Class, as well as the size and identity of class members. Thus,

Plaintiffs have sufficient information to evaluate the terms of the proposed settlement.

> **d.      The risks of establishing liability, damages and of maintaining the class action through the trial (*Grinnell* factors 4, 5 and 6)**

61.      The fourth, fifth and sixth *Grinnell* factors—the risks of effecting class certification, establishing or incurring liability, damages and burdens of prosecuting the class action through the trial—naturally weigh in favor of approving the Settlement Agreement. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted).

62.      This expensive and protracted litigation would continue on, with no guaranteed or inevitable favorable outcome.  Although Plaintiffs believe that they could succeed in certifying a class here, they also recognize that they face several obstacles to obtaining and maintaining class certification.  First, it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the entire class.  In addition, there are inherent risks with a class action involving alleged personal injuries, especially here where causation might be difficult to establish; and, in fact, there have been no Plaintiffs successful in establishing causation to date. Plaintiffs recognize the challenge of quantifying the claim's effect where the time periods in which the challenged claim appeared on the Product packaging.  So it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the class. Class Counsel is also mindful of the inherent problems of proof related to the claims and defenses to the claims asserted in the Litigation.

> **e.      The ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)**

63.      The seventh *Grinnell* factor—the ability of a defendant to withstand a greater judgment—has, in practice, transformed into an acknowledgement that it is more important that

a class receive some relief than possibly "yet more" relief.  *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012).

64.     Should Plaintiffs succeed at trial, damages could be calculated under various theories, including purchase price, premium price and/or statutory damages. As such, Plaintiffs have no reason to believe that Defendants could not withstand a judgment under any of these theories.  However, while evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate.  *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997).

65.     The Settlement Agreement, as discussed above, affords the Class substantial monetary benefits.  The Settlement Agreement provides the primary relief sought by the Class— the assurance that anyone harmed by purchase or use of the Products have the opportunity for compensation, including any alleged personal injuries.  The Agreement allows for some class members to be compensated at more than cost of purchase of the Products. Moreover, by resolving the Class' claims, the Settlement Agreement removes the Class' costs of maintaining litigation.

       **f.**     **The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation (*Grinnell* factors 8 and 9)**

66.     The relief provided by the Settlement Agreement is within the range of reasonableness, in light of the best possible recovery and in light of all the attendant risks of litigation.

67.     This litigation was a factor in Nutek keeping open the full refund program of the

Products challenged in this lawsuit.  *See* Settlement Agreement at ¶¶ 1.4 and 6.3.3.

68.     Class members that have already received refunds under the Recall are able to receive further compensation as the result of this settlement.

69.     Thus, consideration of the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation weighs staunchly in favor of approving the Settlement.

**B.    The Court Should Approve Class Certification**

**1.        The Class Satisfies the Requirements of Rule 23(a)**

70.     A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and the requirements of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997).  As set forth more fully below, the proposed settlement class satisfies all of the prerequisites of Rule 23(a) and (b)(3) and, consequently, Plaintiffs respectfully ask the Court to certify the Class preliminarily, for settlement purposes.

71.     To obtain class certification, Plaintiff must demonstrate that the proposed Settlement Class satisfies the general class certification requirements of: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation under Rule 23(a); and (5) some section pursuant to Fed. R. Civ. P. 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992).

72.     Rule 23(a) has four prerequisites for certification of a class:  (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation.  The Class meets each of these four prerequisites and, consequently, satisfies Rule 23(a).

73.     ***Numerosity*** - Based upon information received from Defendant, there are

16

potentially tens of thousands of members of the Settlement Class. This is sufficient for numerosity. *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) (70 class members sufficient); see also, *Mathis v. Bess*, 138 F.R.D. 390, 393   (S.D.N.Y.   1991)   (joinder impracticable based solely on fact that class had 120 members).

74.    The Second Circuit U.S. Court of Appeals has consistently treated this prerequisite liberally, explaining that numerosity will be found where a proposed class is "obviously numerous."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d. Cir. 1993).

75.    Here, the Class is "obviously numerous."  *Marisol A.,* 126 F.3d at 376. Accordingly, the Class here clearly meets the numerosity prerequisite of Rule 23(a).

76.    **Commonality** - A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987) (common defenses applicable to whole class satisfied commonality requirement).

77.    Under the commonality prerequisite of Rule 23(a), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist.  Fed. R. Civ. P. 23(a)(2).  The U.S. Supreme Court has clarified that this prerequisite will be found where a proposed class' members have brought claims that all centrally "depend upon [the resolution of] a common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

78.    The Second Circuit U.S. Court of Appeals has construed this instruction liberally, holding that plaintiffs need only allege injuries "derive[d] from defendants' . . . unitary course of conduct. . . ." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

79.    Here, Class Members bring claims that centrally depend on the resolution of a

common contention—whether the Products' labeling would mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-410 (S.D.N.Y. 2015); *Ebin v. Kangadis Food, Inc.,* 297 F.R.D. 561, 568 (S.D.N.Y. 2014). Thus, the commonality prerequisite of Rule 23(a) is satisfied here.

80.     **Typicality** - Under the typicality prerequisite of Rule 23(a), plaintiffs must show that their proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). The Second Circuit U.S. Court of Appeals has interpreted this prerequisite to require plaintiffs to show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. . . ." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 2015) (citations omitted). District courts in the Second Circuit, moreover, have repeatedly found this prerequisite easily satisfied, particularly in consumer class action cases. *See Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014); *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (E.D.N.Y. 2005) ("The typicality requirement is not demanding." (internal citations and quotation marks omitted)).

81.     Here, the claims of the Class Representatives are typical of the Class' claims. The Plaintiffs and the rest of the Class, all purchasers of the Products, all challenge the labeling on the Products and claims of the purity thereof.

82.     Again, as with the numerosity and commonality prerequisites, the typicality prerequisite is met.

83.     **Adequacy of Representation** - Finally, under the adequate representation prerequisite of 23(a), plaintiffs must show that their proposed class representatives will "fairly and adequately protect the interests of the [proposed] class." Fed. R Civ. P. 23(a)(4). To do this, plaintiffs must demonstrate that: (1) their class representatives do not have conflicting interests

with other class members; and (2) their class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

84.     Courts under the purview of the Second Circuit U.S. Court of Appeals have consistently applied a lenient standard for meeting both of the adequate representation prerequisites. *E.g., Diaz v. Residential Credit Solutions, Inc.,* 299 F.R.D. 16, 20–21 (E.D.N.Y. 2014).

85.     For the first requirement (adequacy of class representatives), Second Circuit courts have required that plaintiffs merely show that "no fundamental conflicts exist" between a class' representative(s) and its members.  *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).

86.     For the second requirement (adequacy of class counsel), courts in the Second Circuit generally presume it met, only finding it not met in instances where class counsel represents other clients whose interests are inherently at odds with the class' interests or also acts as a class representative.  *See, e.g., Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984).

87.     Here, the adequate representation prerequisite is satisfied.  The Plaintiffs have no fundamental conflicts with other Class Members' interests, as they seek the same type of relief and assert the same legal claims, as other Class Members.  They have diligently served as class representatives throughout this litigation, prepared to sit for their depositions and to testify at trial.

88.     Similarly, Class Counsel are qualified, experienced and able to conduct the litigation and have extensive experience in class action litigation and consumer advocacy.  *See* Joint Declaration.

89.     Thus, the adequate representation prerequisite is met.

### 2.   The Class Meets the Requirements of Rule 23(b)(3)

90.   For certification, in addition to satisfying all Rule 23(a) prerequisites, a settlement class must satisfy Rule 23(b).  Fed. R. Civ. P. 23(b).  Upon a finding that the proposed class meets FRCP 23(a), the Court then determines whether certification is appropriate under FRCP 23(b). *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015).

91.   Here, Plaintiffs seek certification under FRCP 23(b)(3), which provides that certification is proper "if both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Roach*, 778 F.3d at 405 (quoting Fed. R. Civ. P. 23(b)).

92.   Fed. R. Civ. P. 23(b)(3) continues: "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

93.   "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 92 (D. Mass. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 615.)

94.   Where, as here, a court is deciding on the certification question in the context of a

proposed Class, questions regarding the manageability of the case for trial purposes do not have to be considered. *Amchem*, 521 U.S. at 619. The remaining elements or Rule 23, however, continue to apply in settlement-only certification situations. *Id*. at 619.

95.    **Predominance** - "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Lupron*, 228 F.R.D. at 91 (citing *Amchem*, 521 U.S. at 623). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citations omitted).

96.    Thus, while FRCP 23(b)(3) "contemplates that individual questions [of proof] will be present[,]" such questions may not "predominate over the common questions affecting the class as a whole." *Sykes v. Mel S. Harris and Associates* LLC, 780 F.3d 70, 2015 U.S. App. LEXIS 2057, 2015 WL 525904, at *8 (2d Cir. 2015) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)). In order to meet the predominance requirement the plaintiff must establish that issues of general proof predominate over issues of individualized proof. *Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig*.), 280 F.3d 124, 136 (2d Cir. 2001) (quoted in *Mascol v. E&L Transp., Inc.*, No. CV-03-3343 (CPS), 2005 U.S. Dist. LEXIS 32634, at *22-23 (E.D.N.Y. June 29, 2005)). Courts "have repeatedly stated that differences in the amount and recoverability of damages do not defeat predominance." *Collins v. Olin Corp.*, 248 F.R.D. 95, 105 (D. Conn. 2008).

97.    As demonstrated supra when addressing commonality, several issues of law and fact common to all Class Members are present in this matter. These common issues of law and

fact predominate over any potential individual issues that may arise, as they could be resolved through the presentment of proof common to all Class Members.   Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

98.   **Superiority** - Additionally, the superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.   A class action is not only the most desirable, efficient, and convenient mechanism to resolve the claims of the Class, but it is almost certainly the only fair and efficient means available to adjudicate such claims.   *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available").   *See also Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004) (holding a FRCP 23(b)(3) class action superior to alternative methods of adjudication because of the negative value claims of the class members) (quoted in *Mascol v. E&L Transp., Inc.*, No. CV-03-3343 (CPS), 2005 U.S. Dist. LEXIS 32634, at *24-25 (E.D.N.Y. June 29, 2005)).   The Court should consider, *inter alia,* "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b); *Noble*, 224 F.R.D. at 339 (quoted in *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07CV2579(HB), 2008 U.S. Dist. LEXIS 61557, at *25-26 (S.D.N.Y. Aug. 12, 2008).

99.   Further, a class action is superior where class-wide litigation of common issues will reduce litigation costs and promote greater judicial efficiency. *Collins v. Olin Corp.*, 248 F.R.D. 95, 105-06 (D. Conn. 2008) (quoted in *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07CV2579(HB), 2008 U.S. Dist. LEXIS 61557, at *26 (S.D.N.Y. Aug. 12, 2008)).

100.   Class Members likely would be unable or unwilling to shoulder the great expense

of litigating the claims at issue against Defendants given the comparatively small size of each individual Class Members' claims. Thus, it is desirable to adjudicate this matter as a class action.

101.    In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes in connection with the present Settlement.

**C.    NOTICE TO MEMBERS OF THE CLASS IS SUFFICIENT**

102.    Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23 (c)(2)(B).  *See also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 8.2 at 162-65 (4th ed. 2002).

103.    Rule 23(c)(2)(B) further requires that that notice must clearly and concisely state in plain, easily understood language:

> (i) The nature of the action;
> (ii) The definition of the class certified;
> (iii) The class claims, issues, or defenses;
> (iv) That a class member may enter an appearance through an attorney if the member so desires;
> (v) That the court will exclude from the class any member who requests exclusion;
> (vi) The time and manner for requesting exclusion; and
> (vii) The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

104.    Compliance with these requirements satisfies due process. See *In re IMAX Securities Litig.*, 283 F.R.D. 178, 185 (S.D.N.Y. 2012) (citations omitted).

**1.    The Form of Notice is Sufficient**

105.    The proposed Email Notice (including electronic claim form) and Mailed Notice will be supplemented once a Settlement Administrator is chosen.  The proposed Notice will

inform Class members of the (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  In addition, it will provide a telephone number and website that proposed Class Members may use to the extent they have any questions.

106.    The Notices will clearly explain that any member of the Class who wishes to opt out of the Class must timely submit written notice clearly manifesting his or her intent to be excluded from the Class to the designated Post Office box established for such purpose.  To be effective, written notice must be postmarked no later than 21 days before the Final Approval Hearing.  Settlement Agreement, 5.1.13.3.

107.    In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at 314; *see also Phillips Co. v. Shutts*, 472 U.S. 797, 812 (1985*)*. The content of the proposed notice is more than sufficient because it "fairly apprise[s] the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."  *See Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2nd Cir. 1995) (internal quotations omitted).

108.    The proposed notice is comprehensive and more than satisfies this standard, as it provides for Email Notice (including electronic claim form) and Mailed Notice to be provided

24

directly to the vast majority of Class Members.

109.    The Notices also clearly explain that any member of the Class who wishes to object to the settlement must timely file a written statement of objection *Id.*   Such objections must be postmarked no later than 21 days before the Final Approval Hearing.   Settlement Agreement 5.1.13.3.   Class Members will be provided with significant time to submit any objections.   That is more than sufficient under applicable case law.   *See Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d at 1079; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993), cert. denied sub nom. *Reilly v. Tucson Elec. Power Co.*, 512 U.S. 1220, 114 S. Ct. 2707, 129 L. Ed. 2d 834 (1994).

## 2.    Dissemination of Notice is Practicable Under the Circumstances

110.    There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement; and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005), cert. denied, 544 U.S. 1044 (2005).   There are no precise rules as to what constitutes adequate notice, and the due process standards have been held to vary depending on the circumstances of each case. *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090-91 (2d Cir. 1971).   (finding notice by publication the only practical alternative).

111.    Further, it is clearly established that "notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (*citing Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988), cert.

denied, 488 U.S. 1005 (1989)); *see West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090-91 (2d Cir. 1971) (finding notice by publication the only practical alternative).

112.    The word "practicable" implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the "best notice practicable." *Id*. But where members are difficult to locate or identify, the benefits of a class action should not be denied altogether, in the absence of evidence that there is no method of giving a notice that is reasonably calculated to apprise the class members of their opportunity to object. *Id*. Rule 23 contemplates cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case. *Id*.

113.    Judge Weinstein in *Dolgow v. Anderson*, 43 F.R.D. 472, 497, 498 (E.D.N.Y. 1968) commented on the particular notice involved here:

> In determining what constitutes 'the best notice practicable under the circumstances,' it is necessary to remember that the recent amendments were specifically designed to broaden the usefulness of the class action device. . . . By overemphasizing the notice requirement that purpose may be defeated. . . . To require the present plaintiffs to provide immediate actual notice to each member of the classes involved [over 200,000] would, for all practical purposes spell the immediate end to this litigation.

(Quoted by *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090-91 (2d Cir. 1971)).

114.    Lastly, the Notice program will be designed and implemented by a leading notice firm.

**IV.** **CONCLUSION**

115.    WHEREFORE, based on foregoing, Plaintiffs respectfully requests that the Court

enter the Proposed Order:

A.      Preliminarily approving the settlement as set forth in the Settlement Agreement;

B.      Approving the Notice Plan;

C.      Appointing a Settlement Administrator, as agreed to by the parties;

D.      Certifying the Class for settlement purposes;

E.      Appointing named Plaintiffs as Representative Plaintiffs;

F.      Appointing as Plaintiffs' Counsel as Class Counsel; and

G.      Scheduling a Final Fairness Hearing in this matter.

Dated: February 14, 2017    **Law Office of Paul C. Whalen, P.C.**

            By: _____

            Paul C. Whalen
            768 Plandome Road
            Manhasset, NY  11030
            P: (516) 426-6870
            F: (212) 658-9685

            **Jones Ward PLC**
            Jasper D. Ward IV
            Marion E. Taylor Building
            312 South Fourth Street, Sixth Floor
            Louisville, Kentucky 40202
            P: (502) 882- 6000
            F: (502) 587-2007

            **SIPRUT PC**
            Joseph J. Siprut
            17 North State Street
            Suite 1600
            Chicago, IL  60602
            P: (312) 236-0000
            F: (312) 878-1342

            ***Plaintiffs' Counsel***